# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ELIZABETH PULLINS

## DEFENDANTS
ELWYN and STAFFING PLUS HOLDINGS, INC.

**(b)** County of Residence of First Listed Plaintiff: **PHILADELPHIA CTY**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **DELAWARE COUNTY**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sidney L. Gold, Esquire - Sidney L. Gold & Assoc., P.C.
1835 Market St., Ste. 515, Phila, PA 19103  215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION
[X] 3 Federal Question (U.S. Government Not a Party)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only)

## IV. NATURE OF SUIT
[X] 442 Employment

## V. ORIGIN
[X] 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing: 42 U.S.C. § 2000(e), et seq., as amended by the Civil Rights Act of 1991 ("Title VII") -AND- 43 P.S. §951, et seq. ("PHRA").

Brief description of cause: EMPLOYMENT DISCRIMINATION MATTER

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 150,000 IN EXCESS
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
JUDGE: _____  DOCKET NUMBER: _____

DATE: 09/22/2023
SIGNATURE OF ATTORNEY OF RECORD: /S/ SIDNEY L. GOLD, ESQUIRE  #21374  ATTORNEY FOR PLAINTIFF

**FOR OFFICE USE ONLY**
RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __510 E. ASHMEAD ST., PHILA., PA 19144__

Address of Defendant: __ELWYN-111 ELWYN RD.- MEDIA, PA 19063 & SPH-551 W. LANCASTER AVE., HAVERFORD, PA 19041__

Place of Accident, Incident or Transaction: __ELWYN-111 ELWYN RD.- MEDIA, PA 19063 & SPH-551 W. LANCASTER AVE., HAVERFORD, PA 19041__

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [✓]

I certify that, to my knowledge, the within case [ ] is / [●] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __09/22/2023__   __/s/ Sidney L. Gold, Esq.__   __21374__
         *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [✓] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __SIDNEY L. GOLD, ESQUIRE__, counsel of record *or* pro se plaintiff, do hereby certify:

[✓] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[✓] Relief other than monetary damages is sought.

DATE: __09/22/2023__   __/s/ Sidney L. Gold, Esq.__   __21374__
         *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| ELIZABETH PULLINS | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| ELWYN - AND- STAFFING PLUS HOLDINGS, INC. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.         ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (☑)


| 09/22/2023 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)     The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)     In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)     The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)     Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)     Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

   Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH PULLINS, | : |
| *Plaintiff,* | : |
| v. | : CIVIL ACTION NO. _____ |
| ELWYN and STAFFING PLUS HOLDINGS, INC., | : |
| *Defendants.* | : |

## COMPLAINT AND JURY DEMAND

### I.   PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Elizabeth Pullins ("Plaintiff Pullins"), a former employee of Elwyn ("Defendant Elwyn") and Staffing Plus Holdings, Inc. ("Defendant Staffing Plus"), who has been harmed by the Defendants' discriminatory and retaliatory employment practices.

2. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §951, et seq. ("PHRA").

### II.   JURISDICTION AND VENUE:

3. The jurisdiction of this Court is invoked, and venue is proper in this judicial district, pursuant to 28 U.S.C. §§1331 and 1391, as Plaintiff Pullins' claims are substantively based on Title VII.

1

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff Pullins' claims arising under the PHRA.

5. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff Pullins has satisfied all jurisdictional prerequisites to the maintenance of this action. On June 27, 2023, Notices of Right to Sue were issued by the Equal Employment Opportunity Commission ("EEOC") with respect to both Defendants, and this action has been filed within ninety (90) days of receipt of said Notices.

### III. PARTIES:

6. Plaintiff, Elizabeth Pullins ("Plaintiff Pullins"), is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 510 E. Ashmead Street, Philadelphia, Pennsylvania 19144.

7. Defendant, Elwyn ("Defendant Elwyn"), is an entity duly organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a place of business located therein at 111 Elwyn Road, Media, Pennsylvania 19063.

8. Defendant, Staffing Plus Holdings, Inc. ("Defendant Staffing Plus") is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a place of business located therein at 551 W. Lancaster Avenue, Haverford, Pennsylvania 19041.

9. At all times relevant hereto, the Defendants were acting through their agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendants.

10. At all times material hereto, the Defendants are and have been "employers" as defined under Title VII and the PHRA, and are accordingly subject to the provisions of each said Act.

## IV. **STATEMENT OF FACTS:**

11. Plaintiff Pullins was jointly employed by the Defendants from on or about July 22, 2017 until on or about April 27, 2018, the date of her termination.

12. On or about July 22, 2017, Defendant Staffing Plus, a staffing agency, hired Plaintiff Pullins and assigned her to work for Defendant Elwyn at its facility in Norristown, Pennsylvania. At all times thereafter, Defendants jointly employed Plaintiff Pullins.

13. During the course of her employment, Plaintiff Pullins held the positions of Forensic Specialist I and Program Specialist, and at all times maintained an excellent job performance in said roles.

14. By way of background, at all times relevant hereto, Tina Okoro ("Okoro"), Manager in New Beginnings Program, Kathleen Murray ("Murray"), Manager in New Beginnings Program, and Karen Polen ("Polen"), Manager in New Beginnings Program, Jamal Mack ("Mack"), Assistant Director, Akiera Dangerfield-Johnson ("Dangerfield-Johnson"), Natale North Program Manager, and Leonard Thompkins ("Thompkins"), Director, acted as Plaintiff Pullins' immediate supervisors at Defendant Elwyn's facility.

15. Shortly after Plaintiff Pullins commenced employment, the Defendants, through their agents, servants, and employees, began subjecting Plaintiff Pullins to a hostile work environment through various instances of sexual harassment.

3

16. By way of example, on or about January 17, 2018, Plaintiff Pullins assisted Okoro during a community outing event. During said event, Okoro stated that Plaintiff Pullins needed to "watch how [Plaintiff Pullins] flirt[s] with Gregory Jones." By way of background, Gregory Jones ("Jones"), Program Specialist, is a male employee of Defendant Elwyn. Plaintiff Pullins denied any relations with Jones and demanded that Okoro cease her harassment.

17. Shortly thereafter, on January 19, 2018, Plaintiff Pullins observed Okoro speaking with Dangerfield-Johnson. Okoro stated that she had recently attended a consultation for "butt enhancement surgery" at a plastic surgeon's office. Okoro then turned to Plaintiff Pullins and asked that Plaintiff Pullins admit that she had the abovementioned procedure. Plaintiff Pullins denied the same and asked Okoro to cease her lewd commenting. Okoro continued her harassing behavior and made ongoing sexual comments about Plaintiff Pullins' body despite Plaintiff Pullins' repeated requests that she cease.

18. As further sexual harassment, on or about January 24, 2018, Okoro called a resident into the office with herself and Plaintiff Pullins. Okoro then asked the resident, "If you could have [Plaintiff Pullins'] big butt, what would you do with it," while gesturing at Plaintiff Pullins' buttocks in an obscene manner. The resident then stated that he "would need a ladder to climb her" and "he would be in [her] all night." Okoro laughed at the resident's statements and repeated the story to Defendant Elwyn's other employees throughout the shift. Plaintiff Pullins immediately protested the aforesaid sexual harassment and demanded that Okoro cease her inappropriate behavior.

4

19. On January 25, 2018, Okoro called Plaintiff Pullins into her office and stated that she wanted to talk to her about Jones. Okoro stated that Jones "is a married man and that married men don't leave their wives," insinuating that Plaintiff Pullins was romantically interested in Jones. Plaintiff Pullins denied any romantic or sexual involvement with Jones and requested that Okoro stop insinuating the same.

20. Shortly thereafter, Jones entered the office with Okoro and Plaintiff Pullins. Okoro stated to Jones that it was "obvious that he was attracted to [Plaintiff Pullins]." Jones demanded that Okoro stop making such comments. Okoro disregarded Jones and further stated that if Plaintiff Pullins and Jones engaged in sexual activity that "it would be like bacteria and an infection to [Plaintiff Pullins'] system because he is a married man." Okoro continued that Jones wanted to have sexual relations with Plaintiff Pullins if Plaintiff Pullins would allow him. Plaintiff Pullins and Jones both insisted that Okoro refrain from making sexual comments about them and promptly left the office.

21. Subsequently, Okoro followed Plaintiff Pullins to the Natale North unit of Defendant Elwyn's facility. Plaintiff Pullins began speaking about a resident with Damon LNU ("Damon"), a male employee. Okoro then stated to Plaintiff Pullins, "you know that man is married too," alluding to her prior remarks about Jones. Plaintiff Pullins again demanded that Okoro cease her lewd comments. In response, Okoro stated that Plaintiff Pullins should "stop flirting with all the men around here."

22. Later on the same date, Okoro called Plaintiff Pullins into the office and stated that Plaintiff Pullins needed to change her appearance because "all the men around here think [you're] available," insinuating that Plaintiff Pullins dressed sexually in the

5

workplace. However, Plaintiff Pullins presented herself in a professional manner and in the same way as all similarly situated employees, however, no other employees were asked to change their appearance.

23. In a further instance of sexual harassment, on January 25, 2018, Plaintiff Pullins observed Okoro making statements about an incident of a resident attacking Jones. In describing Jones' injury, Okoro described his penis as a "ding-a-ling." Okoro then stated to Plaintiff Pullins that Plaintiff Pullins probably wished she was the resident who attacked Jones "because the resident got to touch [Jones'] ding-a-ling" and Plaintiff Pullins "wanted to touch it."

24. Thereafter, on January 29, 2018, Plaintiff Pullins complained to Dangerfield-Johnson about Okoro's sexual harassment and her creation of a hostile work environment. Dangerfield-Johnson stated that she would speak to Thompkins about Plaintiff Pullins' allegations, but failed to cause the sexual harassment and hostile work environment to cease.

25. On the same date, Okoro was speaking to Eric Jackman ("Jackman"), Program Specialist, in the office when Plaintiff Pullins walked through to the bathroom. Okoro then asked Jackman if he liked "the way [Plaintiff Pullins'] butt looks and the shape of it." Thereafter, Okoro grabbed Plaintiff Pullins by the waist and asked Jackman whether he would date Plaintiff Pullins. Plaintiff Pullins pushed Okoro away and demanded that Okoro put an end to her inappropriate behavior.

26. On January 30, 2018, Plaintiff Pullins complained to Murray and Dangerfield-Johnson about Okoro's sexual harassment. Murray and Dangerfield-Johnson

6

advised Plaintiff Pullins to file a complaint with Thompkins regarding Okoro's conduct. On the same date, Plaintiff Pullins registered a complaint of sexual harassment with Thompkins. Despite this, Defendant Elwyn failed to cause said sexual harassment to cease and refused to remedy the hostile work environment.

27. Subsequently, on February 6, 2018, Plaintiff Pullins submitted a formal complaint to Defendant Elwyn's Human Relations Department detailing her claims of sexual harassment and the creation of a hostile work environment to which she was being subjected.

28. On the same date, Plaintiff Pullins met with Charlene Bayne ("Bayne"), Head of Human Relations for Defendant Elwyn, and discussed the complaint she had filed. However, Defendant Elwyn failed to cause the abovementioned sexual harassment and hostile work environment to cease.

29. Thereafter, Defendant Elwyn, through its agents, servants, and employees, began to retaliate against Plaintiff Pullins for lodging a complaint of sexual harassment and creation of a hostile work environment.

30. By way of example, on February 7, 2018, Plaintiff Pullins overheard Okoro state that she knew Plaintiff Pullins had filed a complaint against her and that Okoro was going to attempt to get Plaintiff Pullins terminated in retaliation for filing said complaint.

31. Thereafter, on or about February 8, 2018, Plaintiff Pullins contacted Shante Nelson ("Nelson"), Recruiter at Defendant Staffing Plus, to report Okoro's sexual harassment and creation of a hostile work environment. Plaintiff Pullins requested to be transferred to another unit as Defendant Elwyn had failed to properly respond to her claims.

In response, Defendant Staffing Plus denied Plaintiff Pullins' request to be transferred and failed to investigate her complaints of sexual harassment and creation of a hostile work environment.

32. On February 19, 2018, Defendant Elwyn transferred Plaintiff Pullins to another unit in the same building in order to separate Okoro from Plaintiff Pullins. However, the sexual harassment and hostile work environment continued.

33. By way of example, on the same date, Plaintiff Pullins was eating shrimp in the office for lunch when Bola LNU ("Bola LNU"), Program Specialist for Defendant Elwyn entered the room and stated that "it smelled fishy in the office." Plaintiff Pullins replied that the smell was from her lunch. Bola LNU stated that the fishy smell was Plaintiff Pullins and "what was between [her] legs," further commenting that Plaintiff Pullins "needs to douche."

34. Subsequently, on February 21, 2018, despite Plaintiff Pullins' attempts to separate herself from Okoro, Okoro entered into Plaintiff Pullins' new unit and demanded that Plaintiff Pullins move her things. Thereafter, Plaintiff Pullins left the unit and notified Dangerfield-Johnson that Okoro had come to harass her. Dangerfield-Johnson then notified Murray and Thompkins.

35. On the same date, Plaintiff Pullins overheard Okoro shouting, "I'm getting sent home because [Plaintiff Pullins] is fucking Leonard [Thompkins]."

36. On the same date, Dangerfield-Johnson called Plaintiff Pullins into her office to ask how Plaintiff Pullins was "holding up." Plaintiff Pullins stated to Dangerfield-Johnson that other employees were taunting Plaintiff Pullins about the confidential content

of her complaint against Okoro. Plaintiff Pullins inquired whether Defendant Elwyn had disclosed her complaint to Defendant Elwyn's employees. Dangerfield-Johnson denied said breach of confidential material, but failed to remedy the retaliation Plaintiff Pullins faced from Defendant Elwyn's employees for lodging said complaint.

37. On February 22, 2018, Plaintiff Pullins continued to hear Defendant Elwyn's employees speak about the confidential content of her complaint. Said employees continued to harass and belittle Plaintiff Pullins for filing a complaint with Defendant Elwyn's Human Relations Department. By way of example, on said date, Plaintiff Pullins' sister called her at work to check in on Plaintiff Pullins. Jere Jones ("Jones"), Program Specialist for Defendant Elwyn, saw Plaintiff Pullins take the call and stated "oh I guess it's another SOS call for help," insinuating that Plaintiff Pullins was making another complaint to Defendant Elwyn's Human Relations Department.

38. Shortly thereafter, on February 23, 2018, Nelson contacted Plaintiff Pullins on behalf of Defendant Staffing Plus. Nelson stated that Defendant Elwyn was in contact with Defendant Staffing Plus and that Plaintiff Pullins needed to send her complaints and documents to Nelson directly. Nelson also stated that she would be forwarding said documents to Defendant Staffing Plus's Human Relations Department. Curiously, this was the first time Defendant Staffing Plus requested said documentation despite Plaintiff Pullins having reported sexual harassment and a hostile work environment to Defendant Staffing Plus earlier that month.

39. On or about March 1, 2018, Defendant Elwyn hired a new employee and reduced Plaintiff Pullins' hours dramatically.

40. Subsequently, on March 9, 2018, Nelson contacted Plaintiff Pullins and stated that Defendant Elwyn's Human Relations Department wanted to meet to discuss Plaintiff Pullins' allegations.

41. Shortly thereafter, on April 10, 2018, Plaintiff Pullins was completing paperwork in the office when Shakia LNU ("Shakia"), entered the office and began to make derogatory comments about Plaintiff Pullins' appearance. Shakia then slammed a nearby rolling chair into Plaintiff Pullins' desk in order to scare Plaintiff Pullins. Thereafter, Shakia stated that Plaintiff Pullins should "get [her] fat ass to Jenny Craig" and that Plaintiff Pullins was "being investigated by Elwyn" and that she "bets [Plaintiff Pullins] won't be at the job for the rest of the week." Plaintiff Pullins subsequently reported the incident to Dangerfield-Johnson, but no action was taken against Shakia.

42. On April 11, 2018, Denise Cole ("Cole"), Human Relations Representative for Defendant Elwyn, approached Plaintiff Pullins to take her statement detailing the events that occurred between Plaintiff Pullins and Shakia on April 10, 2018. Cole stated that it was reported that Plaintiff Pullins was playing inappropriate music in the office and made statements about Shakia's husband. Plaintiff Pullins adamantly denied said allegations. Thereafter, Cole left the meeting and returned with Mack. At that time, Plaintiff Pullins received a phone call from Defendant Staffing Plus and excused herself from the room.

43. During said phone call with Defendant Staffing Plus, Nelson stated that Plaintiff Pullins was being investigated for the incident involving Shakia and that Nelson would contact Defendant Elwyn to explain the incident. Plaintiff Pullins informed Nelson that Shakia had subjected Plaintiff Pullins to retaliation for filing a complaint against

Okoro. Thereafter, Nelson referred Plaintiff Pullins to Bryan Spence ("Spence"), Head of Human Relations for Defendant Staffing Plus. Plaintiff Pullins detailed to Spence the sexual harassment, retaliation, and hostile work environment that she had been subjected to. In response, Spence stated that he would speak to Defendant Elwyn but Plaintiff Pullins' employment with Defendant Elwyn was currently suspended until said investigation could be completed.

44. On April 13, 2018, Plaintiff Pullins attended a meeting with Nelson and Spence. During said meeting, Spence requested that Plaintiff Pullins create a time line of events detailing the instances of sexual harassment, retaliation, and creation of a hostile work environment. Spence stated that he would be relaying said information to Defendant Elwyn.

45. Subsequently, on or about April 27, 2018, Spence telephoned Plaintiff Pullins and notified her that Defendant Elwyn had terminated her employment. Thereafter, Defendant Staffing Plus failed to assign Plaintiff Pullins to any positions that she had the qualifications to fulfill, thereby terminating her employment.

46. Plaintiff Pullins believes and avers that Defendant Elwyn and Defendant Staffing Plus terminated her employment in retaliation for opposing unlawful sexual harassment in the workplace.

## COUNT I
### (Title VII – Sex Discrimination, Hostile Work Environment, Sexual Harassment, Retaliation)
### Plaintiff Pullins v. Defendants

47. Plaintiff Pullins incorporates by reference paragraphs 1 through 46 of this Complaint as though fully set forth at length herein.

48. The actions of the Defendants, through their agents, servants, and employees, in subjecting Plaintiff Pullins to discriminated based on her sex, a hostile work environment through severe and pervasive sexual harassment, and retaliation for opposing sexual harassment in the workplace, constituted violations of Title VII.

49. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff Pullins sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus of future earning power, plus back pay, and front pay and interest due thereon.

50. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff Pullins suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (PHRA – Sex Discrimination, Hostile Work Environment, Sexual Harassment, Retaliation)
### Plaintiff Pullins v. Defendants

51. Plaintiff Pullins incorporates by reference paragraphs 1 through 50 of this Complaint as though fully set forth at length herein.

52. The actions of the Defendants, through their agents, servants, and employees, in subjecting Plaintiff Pullins to discrimination based on her sex, a hostile work environment through severe and pervasive sexual harassment, and retaliation for opposing sexual harassment in the workplace, constituted violations of the PHRA.

53. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the PHRA, Plaintiff Pullins sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus of future earning power, plus back pay, and front pay and interest due thereon.

54. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the PHRA, Plaintiff Pullins suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## **PRAYER FOR RELIEF**

55. Plaintiff Pullins incorporates by reference paragraphs 1 through 54 of this Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Pullins requests that this Court enter judgment in her favor and against the Defendants, and Order that:

a. Defendants compensate Plaintiff Pullins with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination and retaliation;

13

b. Defendants compensate Plaintiff Pullins with an award of front pay, if appropriate;

c. Defendants pay to Plaintiff Pullins punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d. Defendants pay to Plaintiff Pullins pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e. The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Pullins demands trial by jury.

                                        SIDNEY L. GOLD & ASSOC., P.C.

By:   /s/ Sidney L. Gold, Esquire
       SIDNEY L. GOLD, ESQUIRE
       I.D. NO.: 21374
       1835 Market Street, Ste. 515
       Philadelphia, PA 19103
       215.569.1999
       Attorney for Plaintiff

DATED: 09/22/2023

## VERIFICATION

I hereby verify that the statements contained in the attached **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: Sep 21, 2023

*ELIZABETH D PULLINS*
ELIZABETH D PULLINS (Sep 21, 2023 17:48 EDT)
**ELIZABETH PULLINS, PLAINTIFF**